JAMES O'SHAUGHNESSY and Another, Receivers in Equity of the ATLAS ADVERTISING AGENCY, INC., Respondents, *v.* MUNSON G. SHAW and Others, Individually and as Copartners Doing Business under the Name of ALEX D. SHAW & Co., Appellants.

First Department, November 2, 1923.

Principal and agent — action against agent to recover for advertising — defense that defendant was acting solely as agent for disclosed principal — verdict in favor of plaintiff against weight of evidence.

In an action to recover for advertising in which the defense interposed was that the defendant was acting solely for a disclosed principal, the verdict in favor of the plaintiff was against the weight of the evidence.

APPEAL by the defendants, Munson G. Shaw and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 1st day of September, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 28th day of July, 1922,

denying the defendant's motion for a new trial made upon the minutes.

*Lowther & Smith* [*William D. Cunningham* of counsel; *James Wheatland Smith* and *William E. Lowther* with him on the brief], for the appellants.

*Flaherty, Turner & Strouse* [*Lazarus Goldstone* of counsel; *Thomas G. Flaherty* and *Arthur D. Fisher* with him on the brief], for the respondents.

McAVOY, J.:

The complaint upon which this action is founded sets out this basis of its claims:

" *Third.* On or about the 1st day of February, 1920, the plaintiff and the defendants     *   *   *     entered into a certain oral agreement whereby the plaintiff undertook and agreed to plan and conduct an extensive advertising campaign for the defendants in advertising a product called ' Milton,' and in such campaign to insert advertisements of such product, approved by the defendants, in certain newspapers and periodicals published in the United States of America, and to render other services in connection therewith, and whereby the defendants agreed to pay to the plaintiff as rendered all bills for such advertisements, and for such other services."

This is an assertion that the defendants themselves, who were known to be agents of this product, said they would pay the bills for such advertisements, and that their principals were not to be looked to as liable, when advertisements were approved by them and then inserted by the plaintiff in an extensive advertising campaign to be planned by the plaintiff.

Thereafter, it is asserted, in fulfillment of the aforesaid agreement, at request of the defendants, the plaintiff entered into contracts with the publishers of various newspapers and other periodicals throughout the country for the insertions of advertisements approved by the defendants, and caused the insertion of all such advertisements as have been heretofore required, and entered upon the performance of such other services as were required by said agreement, all of which were approved by the defendants; and the plaintiff, pursuant to said agreement and at the defendants' request, has paid out for such insertions of such advertisements or has incurred liability to pay therefor the amounts set forth in the complaint.

The only evidence offered by the plaintiffs to prove the making of the alleged oral agreement was the testimony of one Marvin, a member of the original plaintiff corporate agency, as to a short conversation between himself alone and one Shaw, a partner in

First Department, November, 1923. [Vol. 206

defendant firm, at a place not named in the bill of particulars, and an alleged subsequent telephone conversation between Shaw and Payson, both of which conversations were explicitly denied by Shaw. After the above testimony of Marvin the plaintiffs were allowed to amend their bill of particulars to conform to the proof as to the *locus* of the alleged Shaw-Marvin conversation.

The defendants in their amended answer deny the allegation in the complaint which asserts their liability, and set up separately as defense that in or about the month of February, 1920, and thereafter, they had certain transactions with the plaintiff with regard to advertisements and services relating to a certain product called " Milton," manufactured and sold by the Milton Manufacturing Company, Limited, a British corporation; that in the aforesaid transactions the defendants acted solely as the avowed agents of the said Milton Manufacturing Company, Limited, their disclosed principal; that their agency was at all times known to the plaintiff and the plaintiff dealt with the defendants solely as agents as aforesaid; that in the course of the said transactions the defendants advanced to the plaintiff for the account of their said principal the sum of $32,907.71; that the aforesaid transactions were those which the plaintiff in its complaint had attempted to set up as a cause of action against the defendants.

The original plaintiff in this action was the Atlas Advertising Agency, Inc., of 450 Fourth avenue, New York city; but on February 19, 1921, the present plaintiffs, as receivers in equity of the original plaintiff, were substituted as parties plaintiff. The officers of the Atlas Advertising Agency were William F. Payson, president, Edmund B. Van Hook, vice-president, Edmund R. Marvin, treasurer, and Ralph W. Williams, secretary. D. M. Rogers was the managing director, and J. Arthur Smith, a director of the Milton Manufacturing Company, Limited. The defendants are Munson G. Shaw, Lawrence Daly and Arthur E. Howell, composing the partnership of Alex D. Shaw & Co. of 12 Stone street, New York city.

Shaw was in London in the autumn of 1919, and there learned of the Milton Manufacturing Company, Limited, a British corporation, and of the product " Milton " (a sodium hypochlorite) manufactured by it, which was meeting with great success in the European market. Shaw had known Edmund R. Marvin intimately for many years. When Shaw got back from England he telephoned to Marvin and told him that he had just returned from abroad; that there was a foreign manufacturer who was considering coming into the American market in a large way, and that there was a chance of Shaw's getting the sales agency for the United States. He said that this would involve advertising rather extensively, and

asked Marvin if he was willing to discuss the matter with him. Marvin assented, and Shaw called at the Atlas offices on Fourth avenue and met Marvin and Payson. Shaw told them he had seen extensive advertising in Europe of "Milton;" that he had written applying for the American agency but had received a letter denying his application for the reason that the Milton Company had decided to come to the American market in the autumn of 1919 and open their entire business here themselves. He told them that he had gone to see the Milton Company and had met D. M. Rogers, the managing director, who told him that the Milton Company intended to exploit the American market thoroughly and go into a large campaign; that he and a co-director would arrive that autumn; and that before making any definite arrangements they would consult Shaw as to the placing of their product upon the American market. Shaw explained to Marvin and Payson the product "Milton" itself and its possibilities. Shaw said: "The point is this: I am going to prepare a plan for the placing of 'Milton' on the market. Are you willing to take a gamble and to prepare an advertising campaign?"

Marvin and Payson asked him how much the Milton Company was going to spend in this country for advertising, and Shaw told them that Rogers had said in London that he had been told he could not introduce the product in the United States under an appropriation of $500,000 the first year, but that he had told Rogers he thought it could probably be done for $300,000. Shaw said to them: "Are you willing to take that gamble and prepare the correct advertising program for the expenditure of an appropriation of about $300,000 on this basis * * * ?"

He told them that no arrangements whatever had been made with the Milton Company; that Shaw might get the sales agency and Atlas might not get the advertising; and that Shaw might not get the sales agency and Atlas might get the advertising; that the Milton Company might reject Shaw's plan for placing "Milton" on the market and accept the plan of the Atlas Agency for advertising it. Marvin and Payson said they were willing to take that gamble. They said they would prepare this plan to show how they would advise spending a sum of $300,000, and would submit that plan to Shaw so that it would be ready to present to Rogers on his arrival in December.

The matters leading to the contract are thus outlined by defendant Shaw, and the contract itself is encompassed in the narrow sphere of conversation, which has been heretofore adverted to. A finding one way or the other on the oral proof would constitute no more than a decision of credibility, but there are certain docu-

ments pointing to defendants as the primary obligees, which, unless other potent considerations relieved them, would fasten primary liability upon them.

These are the evidences by document which plaintiff claims prove defendants liable: The whole series of bills which were paid were paid on a billing to defendants' firm; the contracts for advertising were all made with the newspapers in defendants' name, excepting one, the so-called "*World* contract;" the answers by letter from the newspapers acknowledging orders for advertising were all a recognition of defendants' status as a principal, except the *Times* letter which speaks of the Milton Company's advertisement as in the interest of the Milton Manufacturing Company; the checks for payment all were drawn on defendants' funds.

But there are many points in the defense which raise serious doubts about the *bona fides* of plaintiff's claims, to wit:

The negotiations between the Atlas Advertising Agency, Alex D. Shaw & Co., and the Milton Manufacturing Company, Limited, in which Rogers, the Milton Company's representative, participated and indicated his active control of the type and kind of advertising schedule he thought should constitute the basis of the campaign to market the Milton Company product.

The assumptions to be derived from the contract between the Milton Manufacturing Company, Limited, and Alex D. Shaw & Co., providing that the Milton Company should pay for the advertising of its product, and of which the great weight of the evidence indicates plaintiffs' predecessors had knowledge.

The "*World* contract" with the Press Publishing Company, publishers of the New York *World*, signed by the Atlas Advertising Agency as agent, and the Milton Manufacturing Company as advertiser, which Rogers, the representative, signed before any advertising elsewhere was done.

The letter of the New York *Times* to the Atlas Advertising Agency acknowledging the order by the Atlas Agency for "advertising to appear in the New York *Times* in the interest of the Milton Manufacturing Co."

The testimony of Donald Litchard, a disinterested and unimpeached witness, to the effect that Payson told him "we have a big contract with a British manufacturing concern. We are going to advertise in this country a product known as 'Milton.'"

The correspondence of the Atlas Advertising Agency with the magazine "Good Housekeeping," in which the advertising agency indicates its intent to take up the matter of changing the form and nature of the publicity propaganda for the product with the advertiser in England, and gives no intimation of its belief

that the firm sued here would be competent even to change the form.

The fact that, although the defendants denied liability on July 22, 1920, the Atlas Advertising Agency took no steps to cancel advertising until directed to do so by the Milton Manufacturing Company in a cablegram of August 30, 1920.

The letter of the Atlas Advertising Agency to "The Literary Digest," in which it is plainly indicated that cancellations could come only from the other side of the water from the advertising agency's client.

It seems, too, in a review of the probable circumstances that it is quite incredible that plaintiff ever looked to defendants as primarily their debtors under the contract. The great outlay of $250,000 in advertising provided for in the defendants' contract with the Milton Company would hardly be made by sales agents of an untried product in America, even though they took the goods as owners and paid for them. Their contract with the Milton Company shows that the Milton Company was to pay for the advertising campaign, and it seems fantastic to urge that Shaw never told his intimate, Marvin, of it. Every payment made by defendants, when traced to its origin, is found to have come from funds due to their principal or which were to become due for consignments of cases for the Milton Company's product.

The proof of defendants of the original plaintiff's knowledge of agency and the fact of its existence and the presumptions that arise from these facts seem to so well outweigh the plaintiff's counter proofs of defendants' inquiry of references given them and the payment of bills from which a liability to pay is sought to be inferred, that a jury error in the finding of fact must be held to have been made, and, therefore, in the interest of a just determination of the cause, the judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, SMITH and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide the event.